UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RONNIE DANTE THOMAS,

        Plaintiff,

v.

E. HARDIMAN et al.,

        Defendants.
_____/

Case No. 1:22-cv-743

Honorable Jane M. Beckering

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA). Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

**I.    Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The

events about which he complains occurred at that facility. Plaintiff sues Warden J. Schiebner, "Special Acts Coordinator" J. Dickerson, and Head Library Technician E. Hardiman. Plaintiff indicates that he is suing Defendants in their official capacities only. (ECF No. 1, PageID.2.)

Plaintiff contracted COVID-19 on August 5, 2020. (*Id.*, PageID.4.) On April 6, 2021, he commenced a lawsuit against Defendant Hardiman (Case No. 1:21-cv-296) raising, amongst other issues, an ADA claim.[1] (*Id.*) Subsequently, Plaintiff began experiencing symptoms associated with "long COVID." (*Id.*) He avers that those symptoms have had debilitating effects upon his physical and mental health, and that he has been unable to conduct adequate, meaningful, and effective research for his pending civil and criminal actions. (*Id.*) Plaintiff therefore submitted a request to Defendant Hardiman to obtain assistance from a writ writer as part of the MDOC's writ writer program. (*Id.*) Plaintiff claims that MDOC's policy regarding the program indicates that a prisoner is entitled to receive legal writer services if he has a documented physical or mental impairment or learning disability that affects their ability to use the law library to prepare legible and coherent pleadings. (*Id.*, PageID.5.) Plaintiff avers, however, that Defendant Hardiman denied his request and did not provide any notice setting forth the reasons for doing so. (*Id.*) Defendants Dickerson and Schiebner subsequently denied Plaintiff's grievance and grievance appeal regarding the issue. (*Id.*)

Based on the foregoing, Plaintiff asserts violations of his rights under Title II of the ADA. (*Id.*, PageID.4.) The Court also construes Plaintiff's complaint to assert First Amendment

---

[1] Plaintiff is referencing *Thomas v. Burt*, No. 1:21-cv-296 (W.D. Mich.). In an opinion, order, and judgment entered on October 25, 2021, Chief Judge Jarbou dismissed Plaintiff's amended complaint in that matter for failure to state a claim upon which relief may be granted upon screening. Op., Order & J., *Thomas v. Burt*, No. 1:21-cv-296 (W.D. Mich.) (ECF Nos. 8, 9, 10.)

retaliation and access to the courts claims, as well as violations of MDOC policy. Plaintiff requests a jury trial and "any other relief the Court deem[s] just and proper." (*Id.*, PageID.6.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A.    ADA Claims

Plaintiff alleges that Defendants violated his rights under Title II of the ADA. (ECF No. 1, PageID.4.) Title II of the ADA provides, in pertinent part, that no qualified individual with a

3

disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). To state a claim under Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that Defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from Defendants' services, programs, or activities, or was otherwise discriminated against by Defendants, by reason of his disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532–33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). The term "qualified individual with a disability" includes "an individual with a disability who, with or without...the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

Title II of the ADA applies to state prisons and inmates. *See Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs). The proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). As noted *supra*, Plaintiff has named Defendants in their official capacities. (ECF No. 1, PageID.2.)

Even assuming that Plaintiff could be deemed to have a disability based upon the adverse effects caused by long COVID, Plaintiff's allegations do not support a conclusion that he was subjected to discrimination on the basis of that disability. Plaintiff's complaint is wholly devoid of facts suggesting that Defendants were even aware that Plaintiff was suffering from long COVID. Also absent from the complaint is how Plaintiff's inability to access legal writing services impaired

4

his ability to litigate.[2] Plaintiff's conclusory allegations of an ADA violation without specific factual allegations simply fail to state a claim. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. The Court, therefore, will dismiss Plaintiff's ADA claims against Defendants.

### B. Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As noted *supra*, the Court has construed Plaintiff's complaint to assert First Amendment retaliation and access to the courts claims.

---

[2] Indeed, Plaintiff has been a particularly active litigant in this Court, the United States District Court for the Eastern District of Michigan, and the Sixth Circuit Court of Appeals during the time period he claims he was disabled. *See Thomas v. Ludwick*, No. 2:08-cv-15020 (E.D. Mich.) (Plaintiff filed multiple motions on and after January 4, 2022); *Thomas v. Burt*, No. 21-1715 (6th Cir.) (Plaintiff filed and briefed an appeal on and after November 10, 2021); *In re: Ronnie Thomas*, No. 22-1009 (6th Cir.) (Plaintiff pursued a motion for leave to file a second or successive habeas petition); *In re: Ronnie Thomas*, No. 22-1092 (6th Cir.) (Plaintiff pursued a motion for leave to file a second or successive habeas petition); *In re: Ronnie Thomas*, No. 22-1215 (6th Cir.) (Plaintiff pursued a petition for writ of mandamus); *In re: Ronnie Thomas*, No. 22-1662 (6th Cir.) (Plaintiff is pursuing a petition for writ of mandamus); *In re: Ronnie Thomas*, No. 22-1718 (6th Cir.) (Plaintiff is pursuing a motion for leave to file a second or successive habeas petition); *Thomas v. Antes*, No. 1:20-cv-938 (W.D. Mich.) (Plaintiff filed motions and resolved case by stipulation after on and after November 5, 2021); *Thomas v. Burt*, No. 1:21-cv-296 (W.D. Mich.) (Plaintiff filed an amended complaint on October 25, 2021); *Thomas v. Stevens*, No. 1:22-cv-160 (W.D. Mich.) (Plaintiff filed complaints and several motions on and after February 22, 2022); *Thomas v. Schiebner*, No. 1:22-cv-511 (W.D. Mich.) (Plaintiff filed a habeas petition on June 7, 2022); *Thomas v. Schiebner*, No. 1:22-cv-720 (W.D. Mich.) (Plaintiff filed a habeas petition on August 10, 2022); *Thomas v. Schiebner*, No. 1:22-cv-834 (W.D. Mich.) (Plaintiff filed a habeas petition on September 9, 2022).

### 1. **Official Capacity**

As noted *supra*, Plaintiff sues Defendants in their official capacities only. (ECF No. 1, PageID.2.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a Section 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks a jury trial and "any other relief the Court deem[s] just and proper." (ECF No. 1, PageID.6.) To the extent Plaintiff seeks damages, official capacity defendants are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Official capacity actions seeking injunctive relief, however, constitute an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a

suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

The Sixth Circuit has recently noted that "*Ex Parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Plaintiff's complaint suggests that he continues to be denied writ writer assistance and, therefore, appears to suggest an ongoing violation against Defendants. Nevertheless, for the reasons set forth below, Plaintiff fails to state a viable claim for relief against any named Defendant.

## 2.     Claims Against Defendants Dickerson and Schiebner

Plaintiff faults Defendants Dickerson and Schiebner for denying his grievance and grievance appeal regarding Defendant Hardiman's denial of his request for writ writer services. (ECF No. 1, PageID.5.) Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied

7

an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants Dickerson and Schiebner encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, Plaintiff's sole allegation is that they denied his grievance and grievance appeal, which is insufficient to impose liability under § 1983. *See Shehee*, 199 F.3d at 300. His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants were personally involved in the events surrounding the denial of Plaintiff's request for writ writer assistance. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's claims against Defendants Dickerson and

Schiebner are premised on nothing more than respondeat superior liability, his action fails to state a claim against them.

### 3. First Amendment Retaliation

The Court has liberally construed Plaintiff's complaint to assert a First Amendment retaliation claim premised upon Defendant Hardiman's denial of his request for writ writer assistance. It appears that Plaintiff may be suggesting that Defendant Hardiman denied Plaintiff's request because Plaintiff had previously filed a lawsuit against Defendant Hardiman.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003)

9

(discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Plaintiff merely alleges the ultimate fact of retaliation in this action. While filing a civil rights action does constitute protected activity, *see Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002), Plaintiff's complaint is wholly devoid of facts suggesting that Defendant Hardiman was aware of Plaintiff's prior lawsuit, particularly because it was dismissed at screening prior to service of the complaint. Nothing in the complaint permits the Court to infer that Defendant Hardiman retaliated against Plaintiff because of his prior lawsuit. Plaintiff's speculative allegations, therefore, fail to state a First Amendment retaliation claim against Defendant Hardiman, and such claim will be dismissed.

### 4. First Amendment Access to the Courts

The Court has also liberally construed Plaintiff's complaint to assert a First Amendment access to the courts claim against Defendant Hardiman. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to

the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the

11

underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff vaguely alleges that he requested writ writer assistance because the effects of long COVID have precluded him from conducting adequate and effective research for his pending civil and criminal matters. (ECF No. 1, PageID.4.) He appears to suggest that Defendant Hardiman's denial of writ writer assistance has impeded his access to the courts. Plaintiff, however, has utterly failed to allege facts regarding these pending matters and facts suggesting that he suffered an actual injury to any litigation.[3] Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Plaintiff's First Amendment access to the courts claim will, therefore, be dismissed.

### 5. Violations of MDOC Policy

Plaintiff also suggests that Defendants violated MDOC Policy Directive 05.03.115 by not providing him writ writer assistance even though long COVID has adversely affected his ability to effectively litigate. (ECF No. 1, PageID.5.) Section 1983, however, does not provide redress for violations of state law. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). The only possible way a policy might enjoy constitutional protection would be through the Fourteenth Amendment's Due Process Clause.

To demonstrate a due process violation, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause; and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438

---

[3] The Court has reviewed the dockets of all of Plaintiff's cases in this Court, the United States District Court for the Eastern District of Michigan, and the Sixth Circuit Court of Appeals. *See supra* note 2. Plaintiff has not suffered any lost remedy in those cases because of an inability to file documents. He has routinely and timely responded to deadlines imposed by the Courts.

F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts, however, have routinely recognized that a prisoner does not enjoy any federal protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164. Plaintiff's allegation that Defendants violated MDOC policy and procedure, therefore, fails to raise a cognizable federal constitutional claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

13

A judgment consistent with this opinion will be entered.

Dated:  September 26, 2022                    /s/ Jane M. Beckering
                                                   Jane M. Beckering
                                                   United States District Judge